# COOK COUNTY v. CALUMET & CHICAGO CANAL & DOCK COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 1406. Submitted January 9, 1891. — Decided March 2, 1891.

To give this court jurisdiction of a writ of error to a state court it must appear affirmatively, not only that a federal question was presented for decision by the highest court of the State having jurisdiction, but that its decision was necessary to the determination of the cause, and that it was actually decided, or that the judgment as rendered could not have been given without deciding it.

*De Saussure* v. *Gaillard*, 127 U. S. 216; *Johnson* v. *Risk*, 137 U. S. 300, affirmed.

Tested by this rule the writ of error cannot be sustained, as the judgment of the state court proceeded wholly upon the construction of the terms and conditions of the grant of the State to the county by the act of 1852, and as amended by the act of 1854, and the validity of those enactments was not drawn in question.

The validity of a statute is not drawn in question every time rights claimed under such statute are controverted, nor is the validity of an authority every time an act done by such authority is disputed; and here the validity of the authority was not primarily denied, and the denial made the subject of direct inquiry.

A decision by the highest court of a State that the land commissioner had no authority to vacate an entry, and that any order that he might have made did not affect the rights of the party making the entry, is not a decision against a title specially set up or claimed under an authority exercised under the United States, nor against the validity of such an authority.

The acts of the general assembly of the State of Illinois of June 22, 1852, and of March 4, 1854, with reference to swamp lands, were in entire harmony with the acts of Congress, and the intention of the legislation was, as the Supreme Court of Illinois held, to protect the title of purchasers from the United States, after the passage of the act of September 28, 1850, which took effect as a grant *in præsenti*, while it was sought by the Illinois acts to secure to the counties the right to receive the money paid for the lands, as well as to the purchasers the title of the State.

THIS was an action of ejectment brought by the county of Cook, in the Circuit Court of Cook County, Illinois, on the 31st of January, 1883, against the Calumet and Chicago Canal and Dock Company, to recover the S.W. $\frac{1}{4}$ of section 7, township 37 N., R. 15 E., of the third principal meridian, north of the Indian boundary line, containing $46\frac{48}{100}$ acres, except a strip of land held for a railroad right of way. Judgment passed for the defendant, and was affirmed by the Supreme Court of the State on error. The opinion, by Mr. Justice Craig, will be found reported in 131 Illinois, 505.

By the act of Congress of September 28, 1850, entitled "An act to enable the State of Arkansas and other States to reclaim the 'Swamp Lands' within their limits," Congress granted to the State of Illinois, as one of the other States, all the swamp and overflowed lands lying within its borders which then remained unsold, and provided for their segregation and the issue of patents therefor. 9 Stat. 519, c. 84.

On the 22d of June, 1852, an act of the general assembly of the State of Illinois was approved, entitled " An act to dispose of the swamp and overflowed lands, and to pay the expenses of selecting and surveying the same," which provided that all the swamp and overflowed lands granted to the State of Illinois by the act of Congress were thereby granted to the counties respectively in which the same might lie or be situated, "for the purpose of constructing the necessary levees and drains to reclaim the same," etc., and the second section of which contained the following:

" Whenever it shall appear that any of the lands granted to the State by the aforesaid act of Congress shall have been sold by the United States since the passage of this act, it shall be lawful for the said counties to convey such lands to the purchasers thereof. The said deed of conveyance shall be made by the judges of the county court, as such, and countersigned by the clerk of said court, with the official seal thereof affixed; and on delivering said deed to the purchaser, the county judge shall take from him an assignment of all his rights in the premises, and as such assignees they shall be authorized to receive from the United States the purchase-money of said land; and whenever any lands embraced by the said act have been located by bounty land warrants since the passage thereof, it shall be lawful for such county in which the same are situated, to convey the same in manner aforesaid, to the person or persons who located said warrant, and to take an assignment of the same to them as county judges, who shall thereupon be considered as assignees of the State, and as such may locate said warrant on any of the public lands belonging to the United States within the limits of such county, or elsewhere." Sess. Laws Ill. 1852, p. 178.

By the third section the state auditor was directed to furnish each county with an abstract of the swamp lands which had been purchased from the United States, or which had been located by land warrants, or to which the right of preemption had attached since the passage of the swamp land act.

March 4, 1854, this act was amended by an act providing:

"That in all cases where any of the lands granted to the counties by the act to which this act is amendatory, have been sold by the United States since the passage of the act of Congress, entitled: ' An act to enable the State of Arkansas and other States to reclaim the swamp lands within their limits,' approved September 28, 1850, the county courts of the several counties in this State, shall by an order to be entered of record at any regular or special term, sitting for the transaction of county business, make all necessary orders for securing to the purchasers who have purchased swamp and overflowed lands situated in their respective counties, since the passage of the act of Congress as aforesaid, in pursuance and in the manner prescribed by the act of the general assembly of this State, to which this is an amendment: *Provided*, That the county courts may in their discretion, require the purchasers aforesaid to pay to the drainage commissioner, for the use of said county, the cash, at the rate they purchased the lands from the United States, within the time to be specified by said court, by an order entered of record as aforesaid, and on a failure on the part of all such purchasers to comply with the terms of said court, as specified by this act, the said swamp and overflowed lands purchased by the United States as aforesaid, may be sold by the county courts or drainage commissioners, as other swamp and overflowed lands are sold." Sess. Laws Ill. 1854, p. 19.

And at the same session it was enacted: "That the care and superintendence of so much of the swamp and overflowed lands granted to the State of Illinois by the act of Congress entitled: ' An act to enable the State of Arkansas and other States to reclaim the swamp lands within their limits,' approved September twenty-eight, one thousand eight hundred and fifty, as lies in the county of Cook, is hereby vested in the board of supervisors of said county, and the said board of supervisors are hereby vested with all the powers in relation thereto heretofore given to the county court, subject in all respects to the provisions of the act entitled: ' An act to dispose of the swamp and overflowed lands, and to pay the expenses of selecting and surveying the same,' approved June 22d, 1852." Sess. Laws Ill. 1854, p. 184.

On March 2, 1855, Congress passed an act, entitled "An act for the relief of purchasers and locators of swamp and overflowed lands," which was as follows:

"That the President of the United States cause patents to be issued, as soon as practicable, to the purchaser or purchasers, locator or locators, who have made entries of the public lands, claimed as swamp lands, either with cash, or with land warrants, or with scrip, prior to the issue of patents to the State or States, as provided for by the second section of the act approved September twenty-eight, eighteen hundred and fifty, entitled 'An act to enable the State of Arkansas and other States to reclaim the swamp lands within their limits,' any decision of the Secretary of the Interior, or other officer of the government of the United States, to the contrary notwithstanding: *Provided*, That in all cases where any State, through its constituted authorities, may have sold or disposed of any tract or tracts of said land to any individual or individuals prior to the entry, sale or location of the same, under the preëmption or other laws of the United States, no patent shall be issued by the President for such tract or tracts of land, until such State, through its constituted authorities, shall release its claim thereto, in such form as shall be prescribed by the Secretary of the Interior: *And provided, further*, That if such State shall not, within ninety days from the passage of this act, through its constituted authorities, return to the general land office of the United States, a list of all the lands sold as aforesaid, together with the dates of such sales, and the names of the purchasers, the patents shall be issued immediately thereafter, as directed in the foregoing section.

"SEC. 2. *And be it further enacted*, That upon due proof, by the authorized agent of the State or States, before the commissioner of the general land office, that any of the lands purchased were swamp lands, within the true intent and meaning of the act aforesaid, the purchase-money shall be paid over to the said State or States; and where the lands have been located by warrant or scrip, the said State or States shall be authorized to locate a quantity of like amount, upon any of the public lands subject to entry, at one dollar and a quarter

per acre, or less, and patents shall issue therefor, upon the terms and conditions enumerated in the act aforesaid: *Provided, however,* That the said decisions of the commissioner of the general land office shall be approved by the Secretary of the Interior." 10 Stat. 634, c. 147.

On the third of March, 1857, an act of Congress was approved, reading thus:

" That the selection of swamp and overflowed lands granted to the several States by the act of Congress, approved September twenty-eight, eighteen hundred and fifty, entitled ' An act to enable the State of Arkansas and other States to reclaim the swamp lands within their limits,' and the act of the second of March, eighteen hundred and forty-nine, entitled ' An act to aid the State of Louisiana in draining the swamp lands therein,' heretofore made and reported to the commissioner of the general land office, so far as the same shall remain vacant and unappropriated, and not interfered with by an actual settlement under any existing law of the United States, be and the same are hereby confirmed, and shall be approved and patented to the said several States, in conformity with the provisions of the act aforesaid, as soon as may be practicable after the passage of this law: *Provided, however,* That nothing in this act contained shall interfere with the provisions of the act of Congress entitled ' An act for the relief of purchasers and locators of swamp and overflowed lands,' approved March the second, eighteen hundred and fifty-five, which shall be and is hereby continued in force, and extended to all entries and locations of lands claimed as swamp lands made since its passage." 11 Stat. 251, c. 117.

The cause coming on for trial, a jury was waived and the cause submitted to the court for its findings and judgment. The plaintiff introduced in evidence a certified copy of the certificate of the surveyor general of October 29, 1853, that this (with other) land was swamp or overflowed land within the meaning of the act of Congress of September 28, 1850; and also a certificate of the State auditor showing the segregation by the State of the land prior to the passage and approval of the confirmatory act of Congress of March 3,

1857; and the approval of the list of selections by the Secretary of the Interior, May 8, 1866, "subject to any valid legal rights that may exist to any of the tracts therein described;" and thereupon rested its case.

On the part of the defendant there was offered a certified copy of a certificate of the register and receiver of the United States land office at Chicago, Illinois, dated October 20, 1853, to William B. Egan, but not the indorsements made thereon or the entries upon the face thereof; to which evidence the plaintiff objected on the ground that if said paper was put in evidence the whole paper must go in, and also on the ground that such title was subsequent to the swamp land grant under which the plaintiff claimed, and also on the ground that said certificate showed upon its face that it was cancelled; but the court, holding that all of said paper, including the indorsements or entries upon its face, should be in evidence, subject to all objections, allowed the same to be read; to which rulings the plaintiff then and there excepted, and the defendant, excepting to the ruling upon the indorsements and writing on said certificate, read said copy of said certificate in evidence in words and figures as follows:

"Military bounty land act of March 22, 1852.

"*Land Warrant No.* 2495.

"Register and Receiver's No. 34.

"LAND OFFICE, *Oct.* 20, 1853:

"We hereby certify that the attached military bounty land warrant No. 2495 was on this day received at this office from William B. Egan, of Cook County, State of Illinois.

"JAMES LONG, *Register.*

"ELI B. WILLIAMS, *Receiver.*

"I, William B. Egan, of Cook County, State of Illinois, hereby apply to locate, and do locate the southwest fractional ¼, N. I. B. L., of section No. (7) seven, in township No. (37) thirty-seven, N. of range No. 15 E., in the district of lands subject to sale at the land office at Chicago, containing 46$\frac{48}{100}$

acres, in satisfaction of the attached warrant, numbered 2495, issued under the act of 22d of March, 1852.

"[Written across the face :] Cancelled. . See letter to R. R. at Springfield, Aug. 10, 1855. Binckly.

" [Written across the face in red ink :] Reinstated Feb. 15, 1883. W't 101,043, act of 1850, 40 a, substituted.

" Witness my hand this 20th day of October, A.D. 1853.

" WILLIAM B. EGAN.

" Attest : JAMES LONG, *Register*. .

" ELI B. WILLIAMS, *Receiver*.

" I request the patent to be sent to —— ——.

" LAND OFFICE, CHICAGO, *Oct*. 20, 1853.

· " We hereby certify that the above location is correct, being in accordance with law and instructions.

" JAMES LONG, *Register*.

" ELI B. WILLIAMS, *Receiver*.

" Endorsements : 40 acres. 2495. 40. Chicago, Ill. W't 101,043, act 18 ——, 40 acres, substituted for the above number ·Feb'y 15, 1883. Cancelled. See letter to reg'r, Springfield, Ill. Aug. 10,. 1855. Binckly. Cancellation noted on tract book. 17 Nov'r, 1855. R. W. B. B. K. Reinstatement noted Feb'y 15, 1883. See cash entry No. 29,521, Springfield. Lawrence. Approved. . —— ——, clerk. Patented ——. Recorded ——.

" This location is reinstated and warrant No. 101,043 for 40 acres, act of Sept. 28, 1850, substituted for w't No. 2495 for 40 acres, act of 1852, in div. K., February 15, 1883.

" E. KILPATRICK.

" Div. ' K.'

" See letter in div. ' K ' to Cohrs, Dearborn & Shope, Chicago, Ills., Feb. 15, 1883.

" (*Memorandum.*)

· " This entry is in conformity with Com. letter Sep. 13, 1883. The cash part was paid February 28, 1853. ·

" JAMES LONG, *Register*.

" W't susp., however, for erasure; party desires its location cancelled. See reg. (Chicago) letter of May 28, 1855, cancelled therefor, and party allowed to relocate with another wt' No. 101,043.

" Aug. 10, 1855."

It was admitted by the plaintiff that William B. Egan, in April, 1854, executed, acknowledged and delivered to H. S. Monroe a proper deed of conveyance of the land described in the certificate, conveying the same to said Monroe, which deed was duly recorded in January, 1855. And it was further admitted, that May 11, 1871, Monroe executed, acknowledged and delivered to Bowen a deed in due form conveying the land in suit in consideration of $1000 to said Bowen, which deed was recorded in the recorder's office of Cook County in May, 1871. The defendant offered in evidence a deed, properly executed and acknowledged by Bowen, dated January 21, 1872, and recorded June 21, 1872, conveying the land in controversy to the defendant. These deeds were objected to by the plaintiff as immaterial and irrelevant. It was also admitted that this land, together with other lands, was subdivided and platted into blocks and lots by the defendant on June 29, 1875, in accordance with the provisions of the statute of the State of Illinois in that behalf, and duly recorded in the recorder's office of Cook County; and that streets and alleys were, upon said plat, laid out across the land in suit, and the lines of said streets and of the blocks and lots were staked out on the land by defendant. It was shown by the defendant that the land had been taxed each year from 1870 to 1886 (except 1877) for county and State and other purposes, and that these taxes, amounting to nearly $8000, were from time to time paid by it; but this evidence was objected to by plaintiff, because it did not bring defend- ant within any section of the limitation laws concerning the payment of taxes; and plaintiff also objected to the showing of any taxes paid since the commencement of this suit. It was agreed that the property as described in the declaration, or as subdivided, was not assessed for taxes for the year 1877.

It appeared that on May 24, 1870, John W. Bunn entered this land and received a certificate of entry from the register and receiver at the Springfield Land Office, which he assigned to Bowen, and that a patent issued on the 15th of November to Bowen, as Bunn's assignee.

It also appeared that the land was situated within six miles of the Illinois Central Railroad location, and, being part of an odd-numbered section, its minimum price was fixed at $2.50 per acre, under the act of Congress of September 20, 1850, (9 Stat. 466;) and that a reservation was made, by order of the President, of the land fifteen miles in width on each side of the location of that railroad, and specific directions were given on the 19th and 20th of September, 1850, by the commissioner of the general land office to the register and receiver to withhold certain lands, including that in question, from sale or entry of any kind until such lands should be again made subject to private entry by proclamation of the President; and that on the third of April, 1852, by the President's proclamation, the lands were restored to market, and thereafter those within the six-mile limit, not inuring to the State for railroad purposes, were offered by the government at public sale.

The Circuit Court was asked by the parties respectively to rule upon certain propositions of law, some of which were approved and some rejected, exceptions being taken accordingly. Its affirmative rulings were as follows:

"The lists of lands, including the tract of land in question, transmitted to the governor of Illinois under the act of Congress of September 28, 1850, by the Secretary of the Interior, a copy of which, duly certified by the state auditor, has been introduced in evidence, is sufficient evidence in this action to show *prima facie* title to the tract in question in the plaintiff under law.

"If the evidence shows that the land in question was listed as swamp land, and so certified by the Secretary of the Interior to the governor of the State of Illinois, then the effect of such listing and certification was to vest the title thereto in the State of Illinois on the 28th of September, 1850, irrespective of the question whether said tract was situate within six

miles of the line of the Illinois Central Railroad as located or not.

"As a matter of law, the fact that the premises in question were part of an odd-numbered section and lying within six miles of the line of the Illinois Central Railroad as finally located, would not prevent the title thereto passing to the State of Illinois under the swamp land act of Congress of September 28th, 1850, if it were in fact swamp and overflowed land within the meaning of that act at that date.

"If the land in question had in fact been selected as swamp and overflowed land under the swamp land act, approved September 28th, 1850, by the surveyor general of the United States for the States of Missouri and Illinois, and said tract was reported as such swamp land by said surveyor to the commissioner of the general land office on October 29th, 1853, and if the evidence shows that the same remained vacant and unappropriated and not interfered with by an actual settlement under any existing law of the United States on the 3d day of March, 1857, then the title to said tract of land was confirmed in the State of Illinois by the act of Congress approved March 3d, 1857, entitled 'An act to confirm to the several States the swamp and overflowed lands selected under the act of September 28th, 1850, and the act of the 2d of March, 1849.'

"If the land in question was in fact swamp land on the 28th day of September, 1850, the day of the passage of the swamp land grant, then the title passed to the State by virtue of said act irrespective of any acts of the officers of the Department of the Interior of the United States and irrespective of any subsequent confirmatory acts of Congress.

"Under the evidence in this cause the title to the land in controversy, it being swamp land, passed by the grant of September 28th, 1850, known as the swamp land act, to the State of Illinois and the title to the said land vested in the plaintiff, the county of Cook, by virtue of the act of the general assembly of Illinois entitled 'An act to dispose of the swamp and overflowed lands and to pay the expenses of selecting and surveying the same,' approved June 22d, 1852, without the execution of any deed therefor.

"The mere collection and payment of taxes under the township organization laws of Illinois do not work an estoppel to an action of ejectment for lands so taxed.

"That the entry of said land by William B. Egan on October 20, 1853, and the receipt and retention by the United States of the money and warrant delivered by said Egan in payment therefor was a sale by the United States of said land to said Egan, and an appropriation of said land by the United States within the intent and meaning of the confirmatory acts of Congress.

"That said William B. Egan was the owner in said lands in fee, and that the defendant in this case, as assignee of said Egan by regular conveyances, made prior to the commencement of this suit, was at the time of the commencement of this suit the owner of said land in fee and entitled to the possession thereof.

"That under the act of the legislature of Illinois of June 22, 1852, in relation to swamp lands, and under the act amendatory thereof, of the legislature of said State, of March 4, 1854, the county of Cook could not become the owner of said land as against said Egan or his grantees until said county of Cook should comply with the requirements of said acts as to the purchasers of swamp land from the United States subsequent to the enactment of the swamp land act of September 28, 1850, and that the burden was upon said county of Cook, plaintiff herein, to prove affirmatively such compliance.

"That under the law upon the facts shown upon the trial, the plaintiff cannot recover herein."

Among other rulings requested by plaintiff and refused, was this: "The cancellation of the Egan entry, August 10, 1855, by the Department of the Interior of the United States, in the absence of any facts or evidence showing the circumstances which led to this cancellation, must be presumed to have been based upon sufficient facts to authorize it."

The court thereupon found for the defendant and the plaintiff moved for a new trial, which motion being overruled, judgment for defendant was entered, and the cause taken by writ of error to the Supreme Court of the State, and the judgment affirmed.

The Supreme Court held (131 Ill. 505) that, conceding the evidence introduced by the plaintiff was sufficient to establish *prima facie* a title upon which a recovery might be had if no evidence had been introduced by the defendant, yet that as Egan was a purchaser within the meaning and protection attached to this grant, no beneficial title passed to the county. The court said : " It will be observed that the land was entered by Egan after the passage of the act of Congress granting swamp lands to the State. But the entry was made nine days before the land was selected as swamp land; and in this connection it may be remarked, that the fact is well known to all who have given the subject any consideration, that after the passage of the swamp land act of 1850, the various land offices continued open, and lands were sold by the United States which were subsequently claimed by the States under the provisions of the swamp act. This condition of things, no doubt, led to some of the legislation by Congress and the State of Illinois after the act of 1850, which will be referred to hereafter." The court then considered the acts of Congress of September 28, 1850, March 2, 1855 and March 3, 1857, and the acts of the legislature of the State, of January 22, 1852, and March 4, 1854, and thus continued :

" It is thus manifest, from the legislation of Congress and the legislation of the State, that it has always been the intention, both of the general government and of the State, to protect the title of a purchaser of swamp lands. Congress, in making the grant to the State, had the right to impose such terms and conditions as it saw proper, and the State, in granting the lands to the counties, had the undoubted power to provide that purchasers who had bought and paid for the lands should be protected in their several purchases, as, in effect, it did. The county of Cook derived its title to the land under and by virtue of the act of 1852, as amended in 1854, and if the acts do not pass the title to the land in question, it is plain that Cook County could not recover. The first section of the act of 1852 is general in terms, granting all swamp lands which had been granted to the State, to the respective counties ; but section two qualifies section one, and declares that

whenever it shall appear that any of the lands granted to the State shall have been sold, it shall be lawful for the said counties to convey such lands to the purchasers thereof. This was followed by an amendment, passed in 1854, requiring the county courts, by an order to be entered, to make all necessary orders for securing to purchasers of swamp lands their titles to such lands. Under this legislation it is manifest that the State of Illinois never intended to transfer to the counties lands that had been entered from the United States, but, on the other hand, the object was to protect the title of all purchasers. The language, 'it shall be lawful for the said counties to convey,' did not leave a discretion resting with the county to hold the land or convey, as it might think proper; but a positive duty was imposed to transfer such title as it acquired, to the purchaser from the United States, and a county could acquire no rights to the lands by a refusal to observe the requirements of the statute. Indeed, we think it a fair and reasonable construction of the acts of 1852 and 1854, when considered in connection with the acts of Congress, to hold that where lands have been bought, in good faith, from the United States, the title to such lands did not become vested in the county, but passed to the purchaser, under his entry.

" The copy of the certificate of entry procured from the land office at Washington, and read in evidence, contained a statement written across its face, that the entry had been cancelled, and also another statement that it had been reinstated. The commissioner of the general land office had no authority to vacate the entry, and any order that he may have made did not affect the rights of Egan. *Brill* v. *Stiles*, 35 Illinois, 305." *S. C.* 85 Am. Dec. 364.

A writ of error having been allowed by the Chief Justice of this court, and the record having been returned, errors were here assigned as follows: That the Supreme Court of the State of Illinois erred: (1) "In finding that the title to the land mentioned in the declaration was not good in Cook County under and by virtue of the act of Congress called the 'swamp land act,' in force September 28, 1850;" (2) "In not holding

that the title to said land was confirmed in said Cook County by the act of March 3, 1857;" (3) "Both upon the facts and upon the law in finding the title to said land to be in defendant in error and in entering judgment against the plaintiff in error for costs;" (4) "In refusing to decide said cause upon its legal merits and deciding it upon the supposed equities involved in said record;" (5) "In sustaining the trial court in its propositions of law refused for the plaintiff in error, and in sustaining the propositions of law held for the defendant in error;" (6) "In sustaining the trial court in the admission of improper testimony, to wit, the register and receiver's certificate to the land in question, dated October 20, 1853, the same being illegal, and also because the same was cancelled August 10, 1855, the subsequent chain of defendant's title resting upon said cancelled certificate;" (7) "In sustaining the trial court in the introduction of improper evidence, the register and receiver's certificate of said land to John W. Bunn, May 24, 1870, and the patent to his assignee, James H. Bowen, November 15, 1873;" (8) "In sustaining the trial court in permitting evidence to show that the land was not swamp land on October 28, 1850, the same having been certified by the government surveyor general to be swamp land October 29, 1853."

*Mr. Edgar Terhune, Mr. William G. Ewing, Mr. Consider H. Willett* and *Mr. Charles B. Wood* for plaintiff in error.

I. The facts of the record give this court jurisdiction. *Crowell* v. *Randell*, 10 Pet. 368, 392; *Martin* v. *Hunter*, 1 Wheat. 304; *Chouteau* v. *Eckhart*, 2 How. 344; *Cunningham* v. *Ashley*, 14 How. 377; *Bell* v. *Hearne*, 19 How. 252; *Garland* v. *Wynn*, 20 How. 6; *Lytle* v. *Arkansas*, 22 How. 193; *Jefferson Branch Bank* v. *Skelly*, 1 Black, 436; *Bridge Proprietors* v. *Hoboken Co.*, 1 Wall. 116; *Reichart* v. *Felps*, 6 Wall. 160; *Silver* v. *Ladd*, 6 Wall. 440; *Railroad* v. *Smith*, 9 Wall. 95; *Martin* v. *Marks*, 97 U. S. 345; *Hartman* v. *Greenhow*, 102 U. S. 672; *Baldwin* v. *Stark*, 107 U. S. 463; *Wright* v. *Roseberry*, 121 U. S. 488; *Hoadley* v. *San Francisco*, 124 U. S. 639.

II. Législative grants convey an absolute present title as of the date of their passage. Such was the swamp land grant conveying the land in question to the State of Illinois, September 28, 1850. So was the act of the legislature of Illinois conveying such land to Cook County, June 22, 1852. *Wright* v. *Roseberry*, 121 U. S. 488; *French* v. *Fyan*, 93 U. S. 169; *Railroad Co.* v. *Fremont County*, 9 Wall. 89; *Railroad* v. *Smith*, 9 Wall. 95; *Martin* v. *Marks*, 97 U. S. 345; *Supervisors* v. *State's Attorney*, 31 Illinois, 68; *Dart* v. *Hercules*, 34 Illinois, 395; *Smith* v. *Goodell*, 66 Illinois, 450; *Keller* v. *Brickey*, 78 Illinois, 133; *Bristol* v. *Carroll County*, 95 Illinois, 84; *Wabash & St. Louis Railway* v. *McDougal*, 113 Illinois, 603.

III. The certificate of the commissioner of the land office that the land had been selected as swamp land was evidence of title. *Martin* v. *Marks*, 97 U. S. 345.

IV. The list of swamp lands in the office of the State Auditor of the State of Illinois, was also sufficient evidence that the title to the land in question had become vested in the State of Illinois. *Dart* v. *Hercules*, 34 Illinois, 395; *County of Piatt* v. *Gumley*, 81 Illinois, 350; *Keller* v. *Brickey*, 78 Illinois, 133; *Bristol* v. *Carroll County*, 95 Illinois, 84; *French* v. *Fyan*, 93 U. S. 169. And a certified copy thereof is competent evidence. *Wabash & St. Louis Railway Co.* v. *McDougal*, 113 Illinois, 604.

V. The State of Illinois by act of Congress of September 28, 1850, became vested with the title to the land in question, and such title was granted to the county of Cook by the first section of the act of June 22, 1852, when the obligation of such grant was impaired by the act of March 4, 1854, which divested the plaintiff of such title and conveyed it to a subsequent entryman.

*Mr. Charles M. Osborn* and *Mr. Samuel A. Lynde* for defendant in error.

MR. CHIEF JUSTICE FULLER, after stating the case as above reported, delivered the opinion of the court.

The rule is settled that to give this court jurisdiction of a writ of error to a state court it must appear affirmatively, not only that a federal question was presented for decision by the highest court of the State having jurisdiction, but that its decision was necessary to the determination of the cause, and that it was actually decided, or that the judgment as rendered could not have been given without deciding it. *De Saussure* v. *Gaillard*, 127 U. S. 216; *Johnson* v. *Risk*, 137 U. S. 300. Tested by this rule this writ of error cannot be sustained. .

The Supreme Court of Illinois held that title passed to that State by the act of Congress, and that the plaintiff established a *prima facie* right to recover, but that as the State, in granting the lands to the counties, had the undoubted power to provide that purchasers who had bought and paid for the lands should be protected in their several purchases, and had so provided by its act of 1852, and this land had been " sold by the United States " to Egan after September 28, 1850, within the meaning of that act, no title passed to the county. The judgment of the state court proceeded wholly upon the construction of the terms and conditions of the grant of the State to the county by the act of 1852, and as amended by the act of 1854, and the validity of those enactments was not drawn in question.

The effect claimed by counsel as attributable to the act of Congress of 1850, as operating as a grant *in praesenti* to the State of Illinois, was given to it by the Supreme Court, and the confirmatory act of Congress of March 3, 1857, did not enter into the decision of the case, because under the conclusion reached there was no title in plaintiff to be confirmed. There was no decision against a claim or title asserted under the United States, but simply that the county did not obtain title under the grant of the State; that the act of 1852 imposed a positive duty on the county to transfer such title as it acquired to the purchaser from the United States; and that where lands had been bought in good faith from the United States, the title to such lands did not become vested in the county but passed to the purchaser under his entry. This construction by the state court of the laws of the State is

controlling in the premises. *Gormley* v. *Clark*, 134 U. S. 338, 348, and cases cited.

It is said that as Cook County was under township organization law in 1852, and hence under the government of a board of supervisors and not of county courts, it had no special legislative authority to dispose of swamp lands until the passage of the act of March 4, 1854, (Sess. Laws, 1854, p. 184,) imparting that power, and that, therefore, the second section of the act of 1852 did not apply to that county. While this point does not seem to have been presented to the state court, yet, if the State did not intend to transfer title to the lands that had been entered from the United States, as was held by the court, the mere want of power to convey, which was at the next session of the general assembly supplied, would not require a different construction to the contrary of such intention.

As the acts of Congress referred to in the first and second errors assigned did not purport to vest title to swamp lands in Cook or any other county, and the court only passed upon the alleged grant by the State, we are unable to perceive that any federal question was, in this regard, necessarily or in fact decided.

It is further assigned for error that the Supreme Court sustained "the trial court in the admission of improper testimony, to wit, the register and receiver's certificate to the land in question, dated October 20, 1853, the same being illegal, and also because the same was cancelled August 10, 1855, the subsequent chain of defendant's title resting upon said cancelled certificate." And the argument is that the validity of an authority exercised under the United States, namely, the action of the Land Department, was drawn in question, and that the decision was against its validity because against the validity of the alleged cancellation.

The trial court was not requested to hold the entry void because of cancellation, and we think the plaintiff's objection to the admission of the certificate in evidence, and its request for a ruling that the Egan entry was cancelled, and that such cancellation, "in the absence of any facts or evidence showing

the circumstances which led to its cancellation, must be presumed to have been based upon sufficient facts to authorize it," did not draw the validity of the authority of the department in question within § 709 Rev. Stat. upon which section our jurisdiction rests.

The validity of a statute is not drawn in question every time rights claimed under such statute are controverted, nor is the validity of an authority every time an act done by such authority is disputed.

The validity of the authority here was not primarily denied, and the denial made the subject of direct inquiry. *United States* v. *Lynch*, 137 U. S. 280; *Baltimore & Potomac Railroad* v. *Hopkins*, 130 U. S. 210.

The court may have concluded that the transaction as shown by the memoranda was a substitution by Egan, with the consent of the officers of the Land Department, of warrant No. 101,043 for the original warrant No. 2495, which, for some erasure, was suspended; and that the alleged cancellation was not a cancellation of the purchase and entry, but of the location under the suspended warrant, and that, although the official order of substitution was not made by the commissioner until 1883, yet it was manifest from the endorsements that it had been made, in fact, in 1855. At all events, it ruled that the entry by Egan, and the receipt and retention by the United States of the money and warrant delivered by him in payment therefor, was a sale by the United States of the land to Egan.

Certainly the plaintiff did not specially set up or claim any title by reason of the alleged cancellation, and the court rendered no decision against a title so specially set up or claimed. *Chappell* v. *Bradshaw*, 128 U. S. 132.

In *Neilson* v. *Lagow*, 7 How. 772, 775, the plaintiff claimed land under an authority exercised by the Secretary of the Treasury in behalf of the United States, and the decision was against the validity of the authority thus exercised, and such was the case in *Lytle* v. *Arkansas*, 22 How. 193.

The claim of title here was under the act of the legislature of Illinois, and the question arising on Egan's entry and pur-

chase of the land was as to whether the land had been sold by
the United States within the intent and meaning of the act of
June 22, 1852.

The Supreme Court did indeed say, in relation to this mat-
ter, that the commissioner had no authority to vacate the
entry, and that any order that he might have made did not
affect the rights of Egan, and cited to the proposition the case
of *Brill* v. *Stiles*, 35 Illinois, 305, where it was held "that the
mere fact that an entry has been declared void by the com-
missioner of the general land office does not have the effect of
vacating the entry." In other words, the court was of opinion
that the commissioner could not, without notice, and arbi-
trarily, deprive a person of land lawfully entered and paid for,
as was ruled in *Cornelius* v. *Kessel*, 128 U. S. 456, 461.

But the expression of this view in construing the language
of the state statute was not a decision against a title specially
set up or claimed under an authority exercised under the
United States, nor against the validity of such an authority.

It is, however, earnestly urged that the Supreme Court
erred "in holding that, under the act of June 22, 1852, of said
State, said land was conveyed to said Cook County, upon
a condition, and not absolutely, the action of said court in
holding that the act of March 4th, 1854, of said State, trans-
ferred said title of Cook County in said land to William B.
Egan, and his assigns, impaired the obligation of the contract
in said act of 1852, whereby said land was conveyed to said
Cook County." This contention as we understand it, is, that
although the county was merely a public corporation, and
held the swamp lands for public purposes as an agency of the
State, yet the act of 1852 was a contract between the State
and the county, which the State could not by subsequent legis-
lation change; and that the act of March 4, 1854, impaired the
obligation of the grant to the plaintiff in the prior act. We
cannot find that this question was raised in the trial court or
in the Supreme Court, nor do we understand that the Supreme
Court held, as asserted, that the act of 1854 transferred the
title of Cook County to Egan. It was the act of 1852 that
the court proceeded upon, and the act of 1854, relating to the

manner in which the conditions imposed by the act of 1852 should be given effect, added nothing to those conditions, and was not treated by the court as controlling the question of title. And it would be sufficient to dispose of the contention that no such point was raised in the state court.

As to the admission in evidence of the certificate to Bunn and the patent to Bowen, the trial court made no findings as to this entry, and the decision of the Supreme Court makes no reference to it; nor do the other assignments of error require any observations.

These swamp lands were granted to the several States in which they were situated for the purpose, expressed on the face of the act, of enabling them to construct the necessary levees and drains to reclaim them; and the language of the proviso to the second section was "that the proceeds of said lands, whether from sale or by direct appropriation in kind, shall be applied, exclusively, as far as necessary, to the purpose of reclaiming said lands by means of the levees and drains aforesaid." We have repeatedly held that the State had full power of disposition of the lands, and that the application of the proceeds to the purposes of the grant rested upon the good faith of the State, which might exercise its discretion as to their disposal. *Mills County* v. *Railroad Companies*, 107 U. S. 557, 566; *United States* v. *Louisiana*, 127 U. S. 182, 187.

The acts of the general assembly of the State of Illinois were in entire harmony with the acts of Congress, and the intention of the legislation was, as the Supreme Court of Illinois held, to protect the title of purchasers from the United States, after the passage of the act of September 28, 1850, which took effect as a grant *in præsenti*, while it was sought by the Illinois acts to secure to the counties the right to receive the consideration for the lands, as well as to the purchasers the title of the State.

We have carefully considered the record in the light of the elaborate arguments of counsel for plaintiff in error, but are constrained to hold that we have no jurisdiction to review the judgment of the state court, and the writ of error will, therefore, be

*Dismissed.*