## HARRISON *v.* MORTON.

ERROR TO THE COURT OF APPEALS OF THE STATE OF MARYLAND.

No. 245. Argued May 2, 3, 1898. — Decided May 23, 1898.

*Eustis* v. *Bolles*, 150 U. S. 361, affirmed to the points:

(1) That to give this court jurisdiction of a writ of error to a state court it must appear affirmatively not only that a Federal question was presented for decision by the state court, but that its decision was necessary to the determination of the cause, and that it

was actually decided adversely to the party claiming a right un-
der the Federal laws or Constitution, or that the judgment as
rendered could not have been given without deciding it;

(2) That where the record discloses that if a question has been raised
and decided adversely to a party claiming the benefit of a provision
of the Constitution or laws of the United States, another question
not Federal has been also raised and decided against such party,
and the decision of the latter question is sufficient, notwithstand-
ing the Federal question, to sustain the judgment, this court will
not review the judgment.

THIS suit was brought by the plaintiff in error Harrison,
against the defendant in error on the 8th of February, 1895,
in the Baltimore City Court to recover the sum of $300,000
damages for the breach of a contract under seal for the sale
of certain patent rights.

Under the alleged contract the plaintiff in error sold, and
the defendant in error bought and agreed to pay for, a cer-
tain machine, method and device for making barrels and kegs,
and all his right, title and interest in certain pending letters
patent therefor, when issued, at and for the price of three
hundred thousand dollars, whereof one hundred thousand
dollars were to be paid in cash within ten days after the
issuing of letters patent, and the remaining two hundred
thousand dollars were to be paid in the full-paid, non-as-
sessable shares of a corporation, to be incorporated and
organized by the defendant in error Morton under the laws
of Maryland, with a capital stock of five hundred thousand
dollars.

The pleas were:

First. *Non est factum.*

Second. That the signature of the defendant in error to the
alleged agreement was procured by the fraud of the plaintiff.
in error.

Third. That the signature of the defendant in error was
procured by the undue influence of the plaintiff in error.

And also three supplemental pleas on equitable grounds:

1st. That there was no consideration for the alleged agree-
ment.

2d. That at the date of the alleged agreement Harrison

was not the owner of and had no valid title to the machine, method and device mentioned in the declaration.

3d. That at the time of the alleged assignment of the patent Harrison was not the owner of and had not a valid title to the said patent.

The defendant also filed a plea of set-off, and upon demand for a bill of particulars of such set-off filed a bill of particulars, amounting to thirty-one thousand seven hundred and ninety-one dollars and fifty-two cents ($31,791.52).

Replications were duly filed and issues joined on all of them.

The case was tried before the judge without a jury.

At the trial the parties asked the court to rule on certain propositions contained in what the record calls "prayers." They were as follows, with the action of the court expressed thereon:

### "*Plaintiff's First Prayer.*

"The plaintiff, by his counsel, prays the court to rule that if it shall find from the evidence that the contract between the plaintiff and defendant, dated December 8, 1894, and read in evidence, was signed and sealed by the plaintiff and defendant, and left in the possession of the defendant as a complete and operative instrument according to its terms, and that in accordance with said contract, shortly after the execution thereof, the plaintiff executed to the defendant the assignment read in evidence of his right to the invention therein mentioned, on which application for a patent was then pending, and that defendant afterwards employed and paid patent attorneys to procure for him the patent from the Government of the United States and from the governments of other countries; and if the court shall further find that the said application for a patent was allowed by the Government of the United States, and subsequently that letters patent for said invention were granted, bearing date January 22, 1895, as read in evidence, and that the plaintiff, at the time of the execution of said agreement with the *plaintiff*, had no knowledge or notice of the agreement between Henry Campbell and the Campbell Barrel Company offered in evidence, then the plaintiff is entitled to recover.

" ('*And that there is no evidence that the plaintiff had any knowledge or notice of said agreement between said Campbell and said Campbell Barrel Company.*') (Rejected as offered, but granted as modified by omitting the words in Italics.)

### "*Plaintiff's Second Prayer.*

" The plaintiff, by his counsel, prays the court to rule that the defendant has offered no evidence legally sufficient to show that the contract set out in the declaration was procured by the plaintiff from the defendant by fraud, or by undue influence. (Conceded.)

### "*Plaintiff's Third Prayer.*

" The plaintiff, by his counsel, prays the court to rule that the defendant has offered no evidence legally sufficient to show that there was no consideration for the agreement set out in the declaration. (Rejected.)

### "*Plaintiff's Fourth Prayer.*

" The plaintiff prays the court to rule that if the court shall find that on the 11th day of September, 1894, Henry Campbell made to the plaintiff the assignment of one half interest in his then pending application to the United States Patent Office for a patent for the invention in said assignment mentioned, and subsequently, on or about the 26th of November, 1894, made to the plaintiff a further assignment of all his interest in his said pending application and to the patent thereon, whenever the same should thereafter be granted ; then, by virtue of said two assignments, the plaintiff acquired an inchoate title to said invention and to the patent thereon, when the same should thereafter be granted, which title it was competent for the plaintiff to sell, assign and dispose of ; and if the court shall further find that on or about the 10th day of December, 1894, the plaintiff executed to the defendant the assignment read in the evidence and dated the 8th day of December, 1894, for the consideration therein mentioned, and that subsequently, on or about the 22d day of January, 1895, a patent was issued by the United States in the name of said Henry Campbell, for the invention described

in said several assignments from said Campbell to the plaintiff and from the plaintiff to the defendant, then the defendant, by virtue of said letters patent, acquired a valid title to and became the owner of said patent, and said assignment from the plaintiff to the defendant, bearing date the 8th day of December, 1894, was supported by a good and sufficient consideration, and the plaintiff is entitled to recover upon the contracts set out in the declaration, provided the court, sitting as a jury, shall find that the said contract was signed and sealed by the plaintiff to the defendant, and was designed by them to be an operative instrument according to its terms; and provided further that at the time of the execution of said contract, the plaintiff had no knowledge or notice of the agreement between Henry Campbell and the Campbell Barrel Company, bearing date the — day of January, 1892, and offered in evidence by the defendant, and that there is no evidence legally sufficient to show that the plaintiff had any such knowledge or notice of said agreement.   (Rejected.)

### "*Fifth  Prayer.*

"That the agreement of January, 1892, between Henry Campbell and the Campbell Barrel Company, offered in evidence by the defendant, is no defence to this action, if the court shall find that by the true construction of said agreement the invention and device described in the contract set out in the declaration is not embraced within said agreement. (Granted.)"

And the defendant offered the following two prayers:

### "*Defendant's First Prayer.*

"The defendant asks the court to rule as matter of law that upon the pleadings of the case the burden is upon the plaintiff to prove the delivery of the sealed instrument sued on, and if the court, sitting as a jury, finds that the paper sued on never was delivered, the verdict must be for the defendant. (Granted.)

### "*Defendant's Second Prayer.*

"If the court, sitting as a jury, shall find that when the paper sued on was presented by the plaintiff to the defendant

for the latter's signature, with the request that he would sign it, the defendant declined so to do, as the terms of such papers did not correspond with any agreement made or talked of between the plaintiff and defendant, and that thereupon it was agreed between them that the papers in duplicate should be signed by the defendant, and both kept in his possession, and should not be of any force, and should belong to the defendant until he chose to put them in force, and that in pursuance of this agreement they were then signed by the defendant, and always afterwards kept in his possession until produced at the trial of this cause, on notice, and that at no time after the signing of said papers did the defendant ever exercise his option of putting into force, but on the contrary, subsequently thereto, exercised his option by declining to recognize them as in force, then the verdict shall be for the defendant. (Granted.)"

The trial judge rendered a general verdict for the defendant, on which judgment was entered for $35,091.65, with interest and costs.

An appeal having been taken to the Court of Appeals of Maryland by the plaintiff Harrison, the judgment of the court below was affirmed by the said Court of Appeals on the 17th of June, 1896, for $39,091.65, with interest from the 13th of December, 1884, until paid, and costs.

On September 21, 1896, a writ of error to review this judgment was issued to the Court of Appeals of Maryland.

There are nine assignments of error. They embrace rulings on testimony, on the prayers and the following:

"1. It was error to decide that under the laws of the United States the assignments from Henry Campbell to Walter H. Harrison, dated the 11th day of September, A.D. 1894, and the 26th day of November, 1894, respectively, purporting to convey to the said Harrison the 'entire right, title and interest in and to the application for patent — serial number, 522,266 — and the patent right contained therein and covered thereby,' operated to convey to the plaintiff Harrison merely the equitable title in and to said invention and the patent rights covered by said application.

"2. It was error to decide that the said assignments were

not drawn as the laws required, and hence did not convey the legal title to the invention in question."

The opinion of the Supreme Court of Maryland, 83 Maryland, 456, is quite long, necessarily so, as it passes upon all the points which were raised by plaintiffs. The parts of it which concern the case are as follows :

" We think there can be no doubt that the defendant's two prayers were properly granted. By the first the court declared as matter of law that upon the pleadings the burden was upon the plaintiff to prove the delivery of the sealed instrument sued on, and that if the court, sitting as a jury, should find that said paper never was delivered the verdict must be for the defendant. The second prayer recites the evidence more at length, but asserts the same proposition of law, which appears to be well settled in this State. *Edelen* v. *Saunders*, 8 Md. 129. We discover no inconsistency between the two prayers. The plaintiff specially excepted to the second on the ground that there was no evidence in the cause legally sufficient to prove the facts therein set forth. It is clear, however, that the testimony of the witnesses, Morton and Coale, support the facts set forth in the prayer, and we have already held it to be competent and admissible under the issue made by the plea of *non est factum*.

" We will now consider the prayers of the plaintiff. He offered five, the second having been conceded and the fifth granted.

" The controlling proposition in this part of the case is that contended for by the plaintiff in his first, third and fourth prayers, namely, that there is no legally sufficient evidence in the case to show that he had any knowledge or notice of the agreement between the inventor, Campbell, and the Campbell Barrel Company.

" The correctness of this contention of the plaintiff depends, first, upon the legal effect of the assignments from Campbell to the plaintiff, and, secondly, upon the effect of the contract of Campbell with the Campbell Barrel Company — that is to say, whether said Campbell thereby assigned to said company an equitable title to his invention prior in date to the title he

claims to have assigned to the defendant, which latter title the plaintiff claims to be an absolute legal title; and the defendant's contention, on the contrary, is that it is a mere equitable title, subsequent in date, and therefore inferior to the title of the Barrel Company. The plaintiff claims title through two assignments from Campbell, each being for one half interest in a certain application filed in the Patent Office of the United States, at Washington, D.C., which application is for letters patent covering the invention of a machine for forming and making barrels and kegs.

"It will be found upon an examination of these instruments that they do not contain a request to the Commissioner of Patents to issue letters patent to the plaintiff. Notwithstanding they were recorded in the Patent Office, letters patent were issued in the name of Henry Campbell, the inventor, and the defendant contends that the legal effect of such an assignment, in which the inventor fails to embody a request to the Commissioner of Patents to issue letters to the assignee, is to convey to such assignee only an equitable title. It is conceded that by one of the rules of the Patent Office the Commissioner will not and cannot issue the letters patent to an assignee, unless specially requested so to do by the terms of the assignment. One of the witnesses refers to this rule in his testimony. The patent having been issued to Campbell instead of to the defendant, the witness thus explains: ' I ascertained that the probable reason why it (the patent) had not been issued to Mr. Morton was this: The original assignment from Mr. Campbell to Mr. Harrison did not contain the request which the rules of the Patent Office required in order that the patent should be issued in the name of the assignee.' (Rule 26, Rules of Practice in U. S. Patent Office, page 9. Revised April 1, 1892.)"

After considering authorities, the opinion decides that —

"If, therefore, the Campbell Barrel Company acquired an equitable title to the patent, as it undoubtedly did, under its contract with the inventor, before the assignment of the equity to the defendant, the latter took subject to the equitable title in the said company, and the first, third and fourth prayers of

the plaintiff were properly refused, for they all asked the court to say that there was no legally sufficient evidence to show that the plaintiff had knowledge or notice of the agreement between the plaintiff and the barrel company; but, as we have seen, knowledge and notice will be imputed to him, as C. J. Gibson said in *Chew* v. *Barnett, supra,* ' whether he had notice or not,' holding as he did only an equitable title."

The opinion concludes as follows: " Finding no error in the rulings of the learned judge below, the judgment will be affirmed."

*Mr. William Pinckney Whyte* and *Mr. Frederic D. McKenney* for plaintiff in error. *Mr. Samuel F. Phillips* was on their brief.

*Mr. Edgar H. Gans* and *Mr. Bernard Carter* for defendant in error.

MR. JUSTICE MCKENNA, after stating the case, delivered the opinion of the court.

It is manifest that the pleadings of the parties presented for decision other questions besides Federal ones, and which could be, independent of the Federal ones, determinative of the controversy. Assuming, therefore, that a Federal question was involved, it does not appear but that the decision was given on the contention of the defendant that the agreement never became operative for want of delivery. This contention was clearly presented by defendant's prayers, and they contained the only rulings urged upon the court in that way, that is, in the nature of instructions. They were given and the verdict was generally for the defendant. It is therefore natural to presume that the verdict was rendered on account of them and on the ground urged by them. The ruling of the court granting them was sustained by the Supreme Court of the State. It affirmed the ruling as correct in law and as supported by competent testimony. The Supreme Court, it is true, passed on other grounds, passed on the one which it is

claimed involved a Federal question, and decided it adversely to plaintiff. But the rule in such cases has been repeatedly declared by this court. It is not necessary to review the decisions. That has been done by Mr. Justice Shiras in *Eustis* v. *Bolles*, 150 U. S. 361. It is sufficient to announce the rule pronounced in that case:

"It is settled law that, to give this court jurisdiction of a writ of error to a state court, it must appear affirmatively, not only that a Federal question was presented for decision by the state court, but that its decision was necessary to the determination of the cause, and that it was actually decided adversely to the party claiming a right under the Federal laws or Constitution, or that the judgment as rendered could not have been given without deciding it. *Murdock* v. *Memphis*, 20 Wall. 590; *Cook County* v. *Calumet & Chicago Canal Co.*, 138 U. S. 635.

"It is likewise settled law that, where the record discloses that if a question has been raised and decided adversely to a party claiming the benefit of a provision of the Constitution or laws of the United States, another question, not Federal, has been also raised and decided against such party, and the decision of the latter question is sufficient, notwithstanding the Federal question, to sustain the judgment, this court will not review the judgment." See also *Wade* v. *Lawder*, 165 U. S. 624.

*The writ of error must therefore be dismissed.*

Mr. Justice Gray did not hear the argument and took no part in the decision.