CITY OF ST. PAUL *vs.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

February 16, 1891.

Adverse Possession—Evidence.—Evidence *held* sufficient to sustain the findings of fact.

Same—Interest of Disseisor in Possession.—A disseisor in possession has an interest in the land which he may transfer with the possession to another, or which on his death will pass to his heir.

Same—Purchase of Outstanding Title by Adverse Possessor.—One in adverse possession of land may purchase the title of one person against whom he is holding adversely, without abandoning his adverse holding as to the title of another person.

Statute of Limitations—Action by State or City.—The statutes of limitations are, under Gen. St. 1878, c. 66, tit. 2, § 12, and the amendment by Laws 1881, (Ex. Sess.) c. 24, to section 25 of said title, applicable to actions brought by the state or a municipal corporation, whether brought in what is called "a sovereign capacity," or in a proprietary capacity.

Same—Exceptions— Statute Runs from Time of Disseisin.—The exceptions to the running of the statute of limitations contained in section 15 of said title do not apply to the cases specified in section 4, but only to cases where the time to commence the action begins to run when the cause of action against the defendant accrues. Under section 4 the time begins to run at the time of the disseisin, and not at the time when the particular defendant might have been sued, and continues to run while the disseisin continues.

Same—Absence of Disseisor from State.—And as the disseisor, or his successor in the adverse holding, may continue the adverse possession by his tenants or agents, against whom the owner may have his action to recover possession, the absence from the state of such disseisor or his successor does not interrupt the running of the time.

Appeal by plaintiff from an order of the district court for Ramsey county, refusing a new trial after a trial before *Wilkin* and *Brill,* JJ., a jury being waived.

*H. J. Horn* and *O. E. Holman,* for appellant.

*H. R. Bigelow, W. H. Norris,* and *Flandrau, Squires & Cutcheon,* for respondent.

GILFILLAN, C. J.[1] In this action the plaintiff alleges that it is the owner of the land lying between a line running from the south corner of lot 6, along the southerly line of blocks 3 and 4 of Hopkins' addition to St. Paul, to the westerly line of Wacouta street, and the Mississippi river; and also that said land is a public levee, and that the defendant is unlawfully obstructing the levee by buildings erected and railroad tracks laid thereon, excluding the plaintiff and the public therefrom, which constitute a nuisance; and the complaint asks that the nuisance be abated, and the defendant ejected from the land. The answer admits possession by defendant of, and alleges that it owns, the land described in the complaint, except a strip 69 feet in width along the southerly line of said blocks, and that it and its predecessors have been in the continuous adverse possession thereof for more than 20 years, and formally pleads the statute of limitations. The litigated issues in the case are upon the adverse possession. Upon those issues it is immaterial whether the action is one to abate a nuisance, the only nuisance consisting in defendant's possession and use of the land, or one in ejectment; for, if defendant has acquired title by adverse possession, the action cannot be maintained in either view. The cause was tried without a jury, and judgment ordered for defendant, and from an order denying its motion for a new trial the plaintiff appeals.

The court did not state in its findings the specific acts or facts constituting color or claim of title or the possession of the real estate, but states the general conclusion of fact: "That the defendant, and those from and under whom defendant claims and derives title, have had and maintained actual, open, notorious, and exclusive possession of said land whereof defendant is now in possession as aforesaid, continuously and uninterruptedly, for more than twenty years last past, and from a time more than twenty years prior to the commencement of this action; and that such possession of said premises, by said defendant and those from and under whom defendant claims and derives

---

[1] Vanderburgh, J., took no part in this decision.

title, has been throughout said period, and all thereof, adverse to any and all other person or persons whatever, and under claim and color of title." Error is assigned upon various parts of this general finding as not supported by the evidence, and also upon other findings of fact based on and necessarily following upon the facts above stated, and also upon others not material, if the facts above stated are sustained. We shall consider only the facts which the court might well find from the evidence, going to make up the general conclusion of fact above stated. The following is a summary of the essential facts, which the court might find from the evidence, and which we assume it did find, in order to arrive at its general conclusion :

In 1854, one Hopkins, being the owner of the land thus platted, executed and filed the plat of Hopkins' addition to St. Paul. This plat is two blocks in width, from east to west, one of the southern tier of blocks extending from Broadway to Rosabel street, the other from Rosabel street to Wacouta street. Opposite the latter, across Wacouta street, is block 29 of the town of St. Paul. The southerly tier of lots in each of these three blocks front southerly or towards the Mississippi river. Between the southerly two blocks in Hopkins' addition and the river the space on the plat is marked "Levee," and on the plat of St. Paul the space between said block 29 and the river is marked "Landing." There was at that time, and for some time after, a sort of island or bar, surrounded by water when the river was high, extending westerly from Broadway far enough to lap over upon a part of said block 29, and which covered the front of some of the south-fronting lots in said block 29, and the front of some, if not all, of the south-fronting lots in the two blocks in Hopkins' addition. In 1856 this island was surveyed by the United States surveyor. On the plat of the survey filed in the office of the surveyor general it was designated as "Island 11," in section 5, township 28 N., of range 22 W. Had the land thus surveyed been in law separate from the abutting shore land, so that the United States might have disposed of it after having sold such shore land, it would, under the congressional and territorial land-grant acts of 1857, have come, as land "in place," within the grant to the Minnesota & Pacific Railroad Company. It was apparently, upon the records of the

land-office, a part of those grants, and in 1863 the commissioner of the general land-office certified it to the state as land passing under the congressional grant. In 1862 the rights and franchises, including the land grant, of the Minnesota & Pacific Railroad Company, became vested in the St. Paul & Pacific Railroad Company, and, so far as affects the issues of this action, they passed to the First Division of the St. Paul & Pacific Railroad Company, on its organization, in 1864. Through the foreclosure, in 1879, of the mortgages of the latter company, such rights and franchises, including the lands and railroad, passed to the St. Paul, Minneapolis & Manitoba Railway Company. In 1880 that company conveyed the land in controversy to the defendant, which since that time has used it for the purposes of its railroad. The land-grant acts we have referred to, and the records of the survey in the land-office, constitute color of title in the Minnesota & Pacific Railroad Company, and in its successors, as its rights in the land grant passed to each. This is the claim of title under which adverse possession is claimed, and it cannot be questioned that the entry upon "Island 11" was made under that claim.

The entry upon the land under this claim of title was in 1862. In that year the St. Paul & Pacific Railroad Company entered upon the island, and laid a track, upon trestle-work, nearly its entire length from east to west, constructed a freight house, and continued to use both in connection with, and as part of, its railroad. The ground was low, and there was a slough between the island and the main-land, and that company commenced filling with earth to make the land suitable for its use. The possession passed to the First Division of the St. Paul & Pacific Railroad Company in 1864, and that company continued to fill, and build and lay tracks, and to use the land. The evidence is not very definite as to the extent thus actually occupied, but we think it sufficient to justify a finding that, as early as the beginning of 1867, that company was practically in the actual possession, to the exclusion of any other possession, of the land here in controversy. And the actual possession of but a part of the land, being under color of record title to the whole, extended the possession for the purpose of adverse holding to all of it

not in the actual possession of some other person. A paper or record color of title is, of course, not equivalent to actual possession. There must be open, notorious possession of such a character as to be notice to the owner that the land is possessed under a claim of title hostile to his title. When there is such possession, and the land consists of a single tract, paper color of title to the whole tract serves to define the limits of the adverse holding. If the owner of the entire tract is in actual possession of a part, his possession constructively extends to the whole, except so far as it is excluded by actual adverse possession in another. In that case the adverse holder's possession is limited to what he actually possesses, and is not extended by construction. And such would be the effect of another adverse holding, especially if under a senior paper color of title to the whole. No one had title to the whole island. Most, if not all, the lots in Hopkins' addition, and the lots in block 29, town of St. Paul, fronting the landing or levee, had been conveyed by the original owners to different persons. The title of each grantee extended, subject to the public right, across the landing or levee to the river, and the actual possession by any grantee of his lot, or any part of it, extended constructively to the part of the levee or landing in front, subject to such public right. Of the different grantees of such lots, Mr. Schurmeier, who owned two of such lots in block 29, was the only one who appears to have been in actual possession of any part of his lot. The part of the island fronting his lots is not here in controversy. His lots were at the westerly end of the island. The entry and actual possession by the St. Paul & Pacific Railroad Company and its successors was east of Schurmeier's line. Such possession extended to and was limited by that line.

To this apparent adverse possession for more than 20 years before the action commenced, divers objections are made by the plaintiff. These objections may be stated as follows: (1) The possession was not held for the 20 years under the same claim of title. (2) There was not exclusive possession for that period. (3) The claim of title under which the entry was made was abandoned before the end of the 20 years. (4) There was, at different times during that period, recognition of the right or title of the city.

The break in the claim of title is argued to have taken place upon the transfer by the St. Paul, Minneapolis & Manitoba Railway Company to the defendant. That transfer, so far as relates to the land in controversy, was by deed, conveying all *the right, title, and interest* of the grantor company. The possession passed to the grantee company at the time of, and pursuant to, this conveyance. As we understand the argument for plaintiff, it is that the only apparent claim of title the grantee company relies on is this deed. It is true the defendant must make its connection with the claim of title under which its grantor held through the deed. The deed created the privity between the grantor and grantee essential to the continuity of claim and possession necessary to uphold the grantee's possession as a continuation of the original disseisin. There is no principle in the law relating to adverse possession better settled than that a disseisor in possession has an interest in the land which he may transfer, with the possession, to another, or which on his death will pass to his heirs, so that the possessions of the original disseisor, and his heirs or his successive grantees, may be tacked together. If this were not so, the adverse possession could be maintained only by the party entering under claim of title, and would cease upon his death, or his transfer of the land, or of his interest in it, to another. Upon this deed the possession of the grantee must be held to have been in maintenance of the claim of title under which the possession passing to the grantee had been held by the grantor. The transfer made no break in the continuity of claim.

The evidence upon which it is urged there was not exclusive possession was of acts of user, by a great many individuals of the public, with vehicles passing along and over a part of the land of which defendant and its predecessors claimed to be in possession. This evidence was not such as to require a finding that such user was in the exercise of a public right in the land superior to, or independent of, the possession and claim of defendant or its predecessors. From it the court might find, as it must be presumed to have done, that such entries upon and use of the land were merely for the purpose of transacting business with the railroad company in possession, and were subordinate to the possession of such company.

The abandonment of the claim of title, is urged, *first*, from these facts: In 1864, in an action brought by Schurmeier as owner of lots 11 and 12, block 29, town of St. Paul, against the St. Paul & Pacific Railroad Company, a decree was entered enjoining the defendant, in short, from occupying or using the part of the landing in front of these lots, or in any way obstructing or impeding the public use thereof. It operated, in effect, to evict the defendant in that action from that part of Island 11 in front of those lots. It may be assumed that the court in that action decided adversely to the defendant its claim of title to the island. This plaintiff was not a party to that action, nor is it in privity with any party. The decree affected only the parties. There was nothing in it to prevent the defendant continuing in possession of the remainder of the island under its claim of title to it, and there is nothing showing that it did not so continue in possession. There was evidence of negotiations and conversations, prior to the final judgment in the Schurmeier Case, between officers of the First Division Company and officers of the plaintiff, which it is claimed show an understanding that the railroad company would, in respect to its claim to other parts of the island, abide the decision in that case; and also of similar conversations, after the final decision in favor of Schurmeier, which it is claimed show that, as a consequence of that decision, the railroad company did abandon its claim of title. No corporate action tending to show such abandonment was proved. The negotiations and conversations shown were of so vague and indefinite a character that, even conceding the officers could bind their respective corporations, the court below was justified in finding that they did not establish any such understanding or any abandonment in fact.

The abandonment is claimed, *secondly*, from the fact that the railroad company acquired, by purchase or condemnation, the title to the lots in Hopkins' addition and block 29, town of St. Paul, fronting on the levee or landing; and it is argued that, by acquiring the legal title, the company chose to rely on that rather than on its previous claim of title. Had the company by those condemnations and purchases acquired all the titles, or claims of title, against which it was holding adversely, there might be something in the proposi-

tion. But it was holding adversely, not only to the titles of the owners of such lots, but also to the title or claim of the city to the land as a public levee under the dedication claimed to have been made by the original owner; and this title or claim of the city was not taken to the company, nor affected in any way, by the purchases or condemnations of the lots. There can be no question that where different persons have true titles to different interests in land, and the land is held adversely to all of them, the disseisor may take the title of one of such persons without abandoning his claim as against the other. *Northrop* v. *Wright,* 7 Hill, 476.

The only other act, claimed to be a recognition of the public right in the land in controversy as a levee, which we think requires special mention, was as follows: In 1879 there was presented to the common council of the plaintiff a petition signed, "Jas. J. Hill, for the St. Paul, Minneapolis and Manitoba Railway," and "The St. Paul Union Depot Company, by A. B. Stickney, President," asking for the vacation of designated parts of Wacouta, Rosabel, Broadway, the public levee, Pine, Olive, John, Locust, Willius, Neill, Kittson, Conway, and Water streets. The portion of the public levee asked to be vacated was described as "the northwest portion of the same, extending from the northwest side of Sibley street to the northeast side of Broadway, being a width of 26 feet opposite to and adjoining block 29, St. Paul, and of a width of 64 feet opposite to and adjoining blocks 3 and 4, in Hopkins' addition to St. Paul." The part so asked to be vacated does not include the land here in controversy, but, if the part so described was public levee, it would necessarily follow that the land here in controversy was also. The vacation was asked to enable the Union Depot Company to construct a union depot, and secure railroad track communication. Upon this petition a part of each of the streets named, though not so much as was asked for, and a part of the levee, though not so much as asked for, were vacated. Assuming that Mr. Hill had authority to act in the premises for the St. Paul, Minneapolis & Manitoba Railway Company, it is indisputable that the petition was on its face a recognition of the right of the public and the plaintiff in the premises in controversy, and that the claim and possession of the railway company were subor-

dinate to that right. The court below admitted, against plaintiff's objection, the testimony of Mr. Hill to the effect that, when signing the petition, he understood it to be an application to vacate only the streets east of Sibley street, and that he did not know it alluded to any levee east of Sibley street; and we must assume the court found such to be the fact. Treating the language of the petition as merely a written admission, as merely evidence that the railway company recognized the public right, we think it open to the explanation that it was not intended as such; that the petition was signed in ignorance that the language was in it. Had the petition not been acted on, had the council thrown it into the waste basket or merely put it into a pigeon-hole, we think this proposition would not have been questioned. But the council having acted on the petition, and granted it, in part at least, the question arises, can the signers of the petition be heard to say that they did not mean all its terms import? that any particular thing stated in it was in through error and inadvertence, so as not to express their real intention? If they cannot, it must be upon the principle of estoppel. If the council were induced by the apparent recognition of its rights in the land as a levee, by the terms of the petition, to vacate the part of the levee or streets vacated; if that apparent recognition was any part of the consideration for its surrender of the municipal and public rights; if but for that apparent recognition the council would not have granted the petition as fully as it did,—then, on the plainest principles of estoppel, the signers of the petition are bound by its fair import as expressing their actual intention.

We do not think there is anything in the petition, or in the resolution granting it, or in the circumstances under which the petition was made and the resolution passed, showing that any supposed recognition of the rights of the city and public, in the parts of the streets and levee not vacated, induced in any degree the action of the council, or was had in mind at all with reference to that action. Another and entirely adequate motive appears for the action of the council, to wit, the motive to secure for the city and its inhabitants the advantages expected to be derived from the Union Depot. And we do

not find any other evidence in the case requiring the conclusion that the council was in any way influenced by the apparent recognition in the petition. There was therefore no reason why the court could not find the language of the petition sufficiently explained to do away with its apparent effect, as a recognition of the right of the public and the plaintiff.

This is as far as we deem it proper, in an opinion, to go into the questions of fact.

The plaintiff makes these propositions of law: The defence of adverse possession or the statute of limitations is unavailable in law. The defendant, being a foreign corporation, cannot plead or have the benefit of the statute of limitations.

The first of these propositions is based on the rule that statutes of limitations do not bar the state unless there is an express provision or necessary implication to that effect, which rule, so far as it still exists, applies to municipal corporations when acting as agencies of the state, and to which, for that purpose, part of the sovereign power of the state has been committed. This rule and its application has been argued at great length, and a great number of authorities have been cited, showing great diversity of decision and reasoning, and nice distinctions between actions brought in a sovereign capacity and those brought in a proprietary capacity. The great learning and ingenuity displayed in those authorities may be curious, but the usefulness of the cases and text-books cited as guides has been mainly done away with by the statutes. The general statute of limitations (Gen. St. 1878, c. 66, tit. 2, §§ 3–11) seems, and was undoubtedly intended, to include every case of an action brought by a private person. Section 12 provides: "The limitations prescribed in this chapter for the commencement of actions shall apply to the same actions when brought in the name of the state, or in the name of any officer, or otherwise, for the benefit of the state, in the same manner as to actions brought by citizens." This would clearly cover the case of an action by a municipal corporation as an agency of the state; but for some purpose, perhaps to render doubt impossible, Laws 1881, (Ex. Sess.) c. 24, amended the title, by adding to section 25, "that all the

provisions of this title, as to the time of the commencement of civil actions, shall apply to municipal and all other corporations with like power and effect as the same applies to natural persons." There is no distinction suggested, in either of these statutes, between actions brought as "sovereign" or in a governmental capacity, and those brought as "proprietary" or such as a private person might bring for the same or a similar purpose. To hold that it was the intention to make or preserve such a distinction, so as to exclude from the operation of the statutes any actions, in whatever capacity the right involved may be claimed, would be applying a strict rule of construction, contrary to the rule that statutes of limitation, being statutes of repose, are to be liberally construed so as to effectuate the intention of the legislature. As said in *County of Redwood* v. *Winona & St. Peter Land Co.,* 40 Minn. 512, 526, (41 N. W. Rep. 465, 42 N. W. Rep. 473:) "The legislature having adopted the policy of making the statutes of limitation applicable to the state, we ought to give them as liberal construction against the state as against citizens." The statute was held to apply in that case, though the action was brought in a sovereign, rather than a proprietary, capacity. It was to enforce the payment of taxes. There is no power more distinctively sovereign and governmental than that of levying and enforcing payment of taxes.

The considerations of policy and justice, furnishing the reasons for limiting the times within which actions may be brought by private persons, apply with equal force to the bringing of actions by the state or a municipal corporation; with equal force when brought to assert what is denominated a "sovereign" right,—that is, a right which the state alone, or some of its governmental agencies, can possess,—as when brought to assert a right such as a private person may possess. The legislature recognized this in passing the statutes we have quoted. Those statutes settle the question that in all actions, or proceedings in the nature of actions, by the state or municipal corporations, the limitation prescribed for similar or analogous actions by private persons shall apply.

The proposition that a foreign corporation cannot plead or have the benefit of the statute of limitations is based on the proposition that

such a corporation is out of the state, and comes within the provision of Gen. St. 1878, c. 66, § 15, that "if, when the cause of action accrues against a person, he is out of the state, the action may be commenced within the times herein limited after his return to the state; and if, after the cause of action accrues, he departs from and resides out of the state, the time of his absence is not part of the time limited for the commencement of the action." Section 4 of the chapter is the one limiting the commencement of actions to recover real estate : "No action for the recovery of real property, or for the recovery of the possession thereof, shall be maintained, unless it appears that the plaintiff, his ancestor, predecessor, or grantor, was seised or possessed of the premises in question within twenty years before the commencement of the action." It might be suggested that the defendant does not come within the terms of section 15; for the time to commence the action did not begin to run at the time of defendant's entry on that land, but at the time of the disseisin of plaintiff, and had been running for years before an action could have been brought against this particular defendant. The time is not to be measured from the time when this action against this defendant might have been brought, but from the time when the disseisin commenced. And the absence of this defendant from the state at that time in no way affected the commencement of the time limited. The cases intended in the first clause of section 15 are those where the time limited begins to run when the cause of action against the defendant sued accrues. And if it be true that a corporation created under the laws of another state, but authorized by the laws of this state to transact its business within it, and having officers or agents within the state upon whom process to commence actions against it may be served, is, within the meaning of section 15, to be deemed all the time out of the state, then the defendant does not come within the second clause of the section; for never having been in, it could not depart from, the state. The mere theoretical domicile of a corporation in another state, by reason of its having been created under the laws of such state, does not make it out of the state, any more than does the theoretical domicile of a natural person make him out of the state, where it is practically within the state for all the

purposes of its courts acquiring full and complete jurisdiction over it. The purpose of the statute of limitations in allowing specified times for commencing actions, and in making exceptions to the running of such times, is a practical one. It is to give to plaintiff what the legislature deemed a reasonable opportunity to seek a remedy. No mere theoretical absence from the state, not preventing in any way a full and complete remedy, for the times specified, can have been intended by section 15.

But we will put our decision on the broader ground that, whether the action be against a corporation or natural person, the exceptions contained in section 15 do not apply to the time limited in section 4, but only to those actions where the time begins to run when the cause of action against the defendant arises. Where land is held adversely there may be 20 successive possessors, each in privity with his predecessors, so that each may tack to the time of his own possession the time of possession of all those preceding him. If an action be brought against any one of the possessors after the first, the time is not to be counted from his entry,—from the time when the plaintiff might have sued him,—but from the time of the first entry. That entry, being under claim of title hostile to that of the owner, is a disseisin of the owner, and that disseisin continues so long as the hostile entry and possession is maintained, and if continued for 20 years the remedy of the owner is gone; the adverse holder becomes practically the owner of the land. Land may be held adversely through the tenants or agents of the disseisor. It is not necessary that he should be personally in possession, nor is it necessary that he should be within the state, so that process may be served on him. It is necessary, to constitute adverse possession, that there be at all times some person in an action against whom the real owner may recover the possession of the land. If the disseisor be in possession by tenants or agents, the owner may recover the possession from them, and thus break the disseisin, terminate the adverse possession, and reinstate his own seisin. From the nature and requisites of adverse possession the owner has always, during the 20 years, a remedy against it, whether he be able to bring

an action against the disseisor in person or not.   So that absence of the disseisor from the state does not necessarily interrupt the disseisin.

Order affirmed.

NOTE.   A motion for a reargument of this case was denied April 9, 1891.