THOMAS MURTAUGH v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

July 19, 1907.

Nos. 15,199—(167).

**School Land—Adverse Possession.**

> Title to lands granted to the state of Minnesota for the use of its schools by the United States cannot be acquired by adverse possession, as against the state.

Action in the district court for Dakota county to recover possession of a certain tract of land. The case was tried before Crosby, J., who directed the jury to render a verdict for defendant. From an order denying his motion for a new trial, plaintiff appealed. Reversed.

*J. M. Millett,* for appellant.

*F. W. Root,* for respondent.

START, C. J.

This is an action of ejectment brought October 12, 1906, in the district court of the county of Dakota, to recover from the defendant the possession of a strip of land one hundred feet wide running through lot 6, section 36, township 115, range 17, in the county of Dakota, which the plaintiff claims to own in fee. The defendant claimed title to the land by adverse possession and at the close of the evidence the

1 Reported in 112 N. W. 860.

trial court directed a verdict for it. The plaintiff appealed from an order denying his motion for a new trial.

The facts are undisputed. Lot 6, which includes the land in question, was a part of the grant of lands to the state of Minnesota for the use of its schools. The state never conveyed or parted with its title in fee thereto until May 31, 1904, when it executed and delivered its patent therefor to the plaintiff. This patent conveyed the entire lot in fee to the plaintiff, if the defendant had not then gained title to the strip, which is the subject-matter of this action, by adverse possession. The defendant entered into possession of the strip of land under color of title twenty five years prior to the commencement of this action, and ever since has been in the exclusive possession thereof, using it as a part of its right of way.

The sole question which the facts stated raise is whether, in view of the character of the title of the state to its school lands, title thereto can be acquired by adverse possession. This is necessarily so; for, if the state had not lost its title to the strip of land by the defendant's adverse possession, the plaintiff is the owner thereof. The defendant concedes the correctness of the general rule that statutes of limitations do not operate against the state or general government, unless there be an express provision or necessary implication to that effect, and that title to public land cannot be acquired by adverse possession. Maas v. Burdetzke, 93 Minn. 295, 101 N. W. 182, 106 Am. St. 436.

It is, however, the contention of the defendant that the statute of this state (R. L. 1905, § 4072) expressly or by necessary implication provides that title to the school lands of the state may be acquired by adverse possession. The original of section 4072 was section 12, c. 66, G. S. 1866 (G. S. 1894, § 5142), which provided that "the limitations prescribed in this chapter for the commencement of actions shall apply to the same actions when brought in the name of the state, or in the name of any officer, or otherwise, for the benefit of the state, in the same manner as to actions brought by citizens." This court, in the case of City of St. Paul v. Chicago, M. & St. P. Ry. Co., 45 Minn. 387, 48 N. W. 17, held that the provisions of this section of the statute of limitations applied to actions brought by the state, whether brought in its sovereign capacity to enforce rights as to property held by it in trust for the public, or in its proprietary capacity.

The question under consideration in 'that case related to the claim of the city of St. Paul to recover a public levee. In practice this rule, which seems to be against the weight of judicial authority (see Northern Pacific v. Ely, 25 Wash. 384, 65 Pac. 555, 87 Am. St. 775), was cautiously applied, and it was held that the statute did not begin to run as to public streets, ways, levees, and grounds until they were required for actual public use. Parker v. City of St. Paul, 47 Minn. 317, 50 N. W. 247; St. Paul & D. R. Co. v. Village of Hinckley, 53 Minn. 398, 55 N. W. 560; Bice v. Town of Walcott, 64 Minn. 459, 67 N. W. 360. The legislature, however, by chapter 65, p. 65, Laws 1899, abrogated the rule. See City of Hastings v. Gillitt, 85 Minn. 331, 88 N. W. 987. The statute now reads as follows: "Such limitation shall apply to actions by or in behalf of the state and the several political divisions thereof: Provided, that no occupant of a public way, levee, square, or other ground dedicated or appropriated to public use shall acquire, by reason of his occupancy, any title thereto." R. L. 1905, § 4072.

The statute, making statutes of limitations applicable to the state, to which reference has been made, must be construed with reference to the school land grant and the provisions of the state constitution accepting the grant and providing for the sale of the land. Section 18 of an act of congress entitled "An act to establish the territorial government of Minnesota," passed March 3, 1849 (9 St. 408, c. 121), known as the "Organic Act of Minnesota," reserved sections 16 and 36 of every township for the purpose of being applied to schools of the territory and future state. This was supplemented by section 5 of the act of congress passed February 26, 1857 (11 St. 167, c. 60), authorizing the people of Minnesota to form a state government. This section granted to the state sections 16 and 36 of the public lands in every township within the state for the use of schools, provided the grant should be accepted by the constitutional convention, and, if it were, then its terms should become obligatory on the United States and the state of Minnesota. The convention, and the people of the state by their approval and ratification of the constitution, accepted the grant of sections 16 and 36 for the use of the schools of the state, and safeguarded the trust by providing that the proceeds of such trust lands should remain a perpetual school fund, and that no

portion of the lands should ever be sold otherwise than at public sale. Const. (Minn.) art. 2, § 3, and article 8, § 2. Our school land grant, then, was not made to the state, in its proprietary capacity, but in trust, for the explicit purpose of having the lands applied to the use of the schools of the state. This was the substantial consideration for the grant which induced the United States to make it. The state accepted the trust, and by its constitution solemnly covenanted with the United States to apply the granted lands to the sole use of its schools according to the purpose of the grant, and prohibited the sale of any portion of the granted land except at public sale." Such being the nature of the title of the state to its school lands, it is unthinkable that the legislature intended, by section 12, c. 66, G. S. 1866, and later acts amending it, to provide a way whereby the trust as to any of the school lands might be defeated, and title thereto acquired by adverse possession, contrary to the mandate of the constitution that title thereto could only be obtained by a public sale thereof.

The decision in the case of Northern Pacific Ry. Co. v. Townsend, 190 U. S. 267, 23 Sup. Ct. 671, 47 L. Ed. 1044, is an interesting and authoritative one. In that case the railway company, brought ejectment to recover from the defendant a portion of its right of way, to which the defendant claimed title by adverse possession under the statute of limitations of this state. 84 Minn. 152, 86 N. W. 1007, 87 Am. St. 342. The supreme court of the United States held that, although the plaintiff's right of way granted to it by the United States, was amenable to the police power of the state, yet an individual could not acquire title to any portion thereof by adverse possession under the statute of limitations of the state. In its opinion the court, after stating that the grant of the right of way was for a specific purpose, said: "This being the nature of the title to the land granted for the special purpose named, it is evident that to give such efficacy to a statute of limitations of a state as would operate to confer a permanent right of possession to any portion thereof upon an individual for his private use would be to allow that to be done by indirection which could not be done directly."

We are, then, of the opinion that, if the statute under consideration must be construed as authorizing the acquisition of title to the school lands of the state by adverse possession, it violates in this respect, not

only the terms of the grant, but also the constitution of the state. We are, however, of the opinion that the statute fairly may be given a construction which is consistent with the terms of the school land grant· and the provisions of the state constitution applicable thereto. If the statute be read in connection with the general and well-understood rule of law that title to public land cannot be acquired by adverse possession, the history of our school land grant, the nature of the title of the state to its school lands, and the mandates of our constitution with reference to them, it is clear upon the face of the statute that the legislature did not intend to provide for the acquisition of the title to school lands by adverse possession. We accordingly hold that title to lands granted to the state of Minnesota for the use of its schools by the United States cannot be acquired by adverse possession, as against the state.

Order reversed and a new trial granted.