EDWARD J. SCOFIELD v. FRANK SCHEAFFER.[1]

April 24, 1908.

Nos. 15,563—(80).

**State Swamp Lands.**

Since the adoption of the amendment in 1881 to section 2, article 8, of the constitution of the state, title or the right to occupy swamp lands acquired by the state from the United States cannot be acquired by adverse possession against the state.

**Same—Action by Purchaser.**

The purchaser of state swamp land, who holds a land commissioner's certificate therefor, has such a title as will enable him to maintain an action to have removed a milldam which causes the water to overflow his land.

Action in the district court for Grant county to have a certain milldam on the Pomme de Terre river removed because its maintenance caused the overflow of plaintiff's land and to recover $100 damages. The answer alleged that defendant was the owner of a custom mill which was run by power obtained by means of a dam constructed on that river, that the mill and dam were erected in the year 1874 and had been openly, continuously, and adversely operated ever since that time by defendant's grantors and himself, and that plaintiff bought his land with knowledge of and subject to defendant's right to overflow the same. The case was tried before Flaherty, J., who found as conclusion of law that the dam in question was a nuisance to plaintiff's land; that defendant abate the nuisance and lower the dam four feet;

[1] Reported in 116 N. W. 210.

and that the sheriff be ordered to lower the milldam four feet. From the judgment entered pursuant to the findings, defendant appealed. Affirmed.

K. T. Dahlen and N. J. Bothne, for appellant.

E. J. Scofield and R. J. Stromme, for respondent.

ELLIOTT, J.

This is an appeal from a judgment which requires the defendant to remove a milldam, which in its present condition causes the water to overflow the plaintiff's land.

On June 29, 1896, the United States conveyed the land in question to the state of Minnesota. On November 4, 1905, the respondent purchased the land from the state at a sale of swamp land, and received therefor from the state a land commissioner's certificate, which was duly recorded. Under this certificate the purchaser became entitled to the possession of the land. The court found that twenty five acres of the land was in its natural state valuable for meadow and agricultural purposes. The Pelican river, a small stream some ten or twelve feet wide, flows across the land and into another small stream, known as the Pomme de Terre river. Until the construction of the dam these streams never overflowed the land, so as to injure it for meadow or agricultural purposes. Since July 12, 1893, the appellant has been the owner of certain land lower down on the Pomme de Terre river, on which a dam across that river was erected by the former owners of the land in 1874. The purpose of this dam was to supply water power to run a flouring mill, which was erected about the same time the dam was constructed. The original mill had a capacity of one hundred thirty barrels of flour a day. In 1887 this mill was burnt; but another of smaller capacity was immediately built, and has been in constant use until the time of the commencement of this action. The dam across the Pomme de Terre river has, during all the time since 1874, caused the water in the river to back up and overflow twenty five acres of the plaintiff's land, so as to submerge it to the depth of four feet.

The court found that the defendant had not acquired the right to overflow the plaintiff's land by adverse possession, and ordered a judgment which directed the sheriff to cut down and lower the dam four

feet from the height at which it was being maintained when the action was commenced.

The appellant discusses a number of questions, some of which are not raised by proper assignment of error. The rulings of the trial court upon questions of evidence were correct, but are not of sufficient importance to justify extended discussion; nor is there anything in the claim of the appellant that the equities are so unequal as to require the court to deny the plaintiff relief. The record does not justify the claim that there is no evidence to establish the fact that the plaintiff is the owner of the overflowed land. The commissioner's certificate is not printed in the paper book; but it is found in an amended return which was made in pursuance of an order of this court. In view of what was said in Haaven v. Hoaas, 60 Minn. 313, 62 N. W. 110, in reference to a certificate of a sale of state school lands, and the provisions of the constitution and laws (R. L. 1905, § 2407) as to the sale of swamp lands, we are unable to see any reason why a holder of a certificate of state swamp lands cannot maintain an action to abate a nuisance, the existence of which results in injury to his land.

The important question is whether the appellant has acquired the right to overflow the land by adverse possession for the statutory·period. This depends upon whether the statute of limitations runs against the state in such a case. If it does, the defendant acquired a prescriptive right to overflow the land before the plaintiff acquired the commissioner's certificate in 1905. In the recent case of Murtaugh v. Chicago, M. & St. P. Ry. Co., 102 Minn. 52, 112 N. W. 860, it was held that the title to lands granted to the state of Minnesota for the use of schools by the United States cannot be acquired by adverse possession against the state. The swamp lands were acquired by the state in 1860, after the adoption of the constitution, so that they were not taken subject to the conditions which attached to the school lands with reference to the manner of their disposition and the use of the proceeds. The lands were received from the United States free from any enforceable conditions, and the title vested in the state, with full power to exercise its judgment as to the manner of their sale. Hagar v. Reclamation District, 111 U. S. 701, 712, 4 Sup. Ct. 663, 28 L. Ed. 569; United States v. Louisiana, 127 U. S. 182, 8 Sup. Ct. 1047, 32 L. Ed. 66; Cook County v. Calumet & Chicago C. & D. Co., 138 U. S. 635–

655, 11 Sup. Ct. 435, 34 L. Ed. 1110. It may be assumed, therefore, that the title to such land could then have been acquired by adverse possession. But in 1881, before any prescriptive rights had been acquired by this appellant or his predecessors in title, the people adopted a different policy with reference to the swamp lands which had been acquired from the national government and embodied it in an amendment to the constitution. The effect of the amendment was to place the swamp lands on the same footing as the school land by providing that:

"All swamp lands now held by the state or that may hereafter accrue to the state shall be appraised and sold in the same manner and by the same officers and the minimum price shall be the same less one-third as is provided by law for the appraisement and sale of the school lands under the provisions of title 1 of chapter 38 of the General Statutes. The principal of all funds derived from sales of swamp lands as aforesaid shall forever be preserved inviolate and undiminished. One-half of the proceeds of said principal shall be appropriated to the common school fund of the state; the remaining one-half shall be appropriated to the educational and charitable institutions of the state in the relative ratio of cost to support said institutions."

The constitution as thus amended placed the same restrictions upon the disposition of swamp lands as then existed in reference to school lands, and thereafter title to such lands could be acquired only at public sale and subject to the constitutional restrictions. What was said in the Murtaugh case is therefore applicable to the present case, and the decision is controlling.

The argument based on the fact that the appellant is not seeking to acquire the title to the land, but merely an easement, is not convincing. There is, of course, a distinction; but it does not seem controlling, when the easement results in changing meadow or farm land into the bottom of a permanent lake.

The judgment is therefore affirmed.