Flora FISCHER, et al., Appellants,

v.

CITY OF SAUK RAPIDS, Respondent.

No. 82–65.

Supreme Court of Minnesota.

Nov. 5, 1982.

---

Michael O. Burns & Associates and Paul Widick, St. Cloud, for appellants.

Rinke, Noonan, Grote & Smoley and Gerald W. Von Korff, Sauk Rapids, for respondent.

TODD, Justice.

Flora, Lester and Sharon Fischer claimed adverse title to 1.61 acres of platted land, the title of which was in the name of the City of Sauk Rapids. The county court granted summary judgment for the city. On appeal to a three-judge panel of the district court, the matter was remanded to the county court for additional evidence. The matter was transferred to the district court and the trial court again granted summary judgment for the city on the grounds that our statutory scheme precludes acquiring adverse title against a municipality. We affirm.

The property in question consists of platted property in the City of Sauk Rapids. The parties own property adjoining the disputed property. The disputed property was forfeited to the state for unpaid taxes in 1928. A portion of the forfeited property was conveyed by the state to the city in 1938. In 1939, the balance of the property was conveyed to a third party who quieted title to this portion of the disputed property. In 1954, the city acquired the balance of the disputed property from the third party.

In determining this issue we assume that the Fischers have openly and notoriously possessed the disputed property for more than 15 years, the time frame required by our statute. See Minn.Stat. § 541.02 (1980). We further assume that the city had attempted to use the property and been told they were trespassing. We further assume that the city acquiesced at one time in not using the disputed property for its own benefit. Under these circumstances we must determine if adverse title can be acquired against the city under our statutory scheme.

The parties' dispute in this case centers on Minn.Stat. § 541.01 (1980),[1] which provides in relevant part:

Actions can only be commenced within the periods prescribed in this chapter * *.

---

1. Minn.Stat. § 541.01 was amended by Act of April 14, 1981, ch. 26, § 3, 1981 Minn.Laws 35, 36; however, the section at issue in this case has not been altered and the 1981 addition to the statute is irrelevant here.

Such limitation shall apply to actions by or in behalf of the state and the several political subdivisions thereof; provided that *no occupant of a public way, levee, square, or other ground dedicated or appropriated to public use shall acquire, by reason of his occupancy, any title thereto.* (emphasis added).

The issue before the court is the interpretation of the statutory phrase "dedicated or appropriated to public use." In particular, the court must determine whether, in order to prevent claims of adverse possession, a city must appropriate land to public use by means of an affirmative act such as dedication generally requires, or whether lands held by a municipality are, by definition, appropriated to public use. The Fischers concede in this matter that they have no claim to the platted streets as this claim is controlled by our decision in *Village of Newport v. Taylor,* 225 Minn. 299, 30 N.W.2d 588 (1948).

Fischers contend that a strict reading of the statute compels the conclusion that the terms appropriation and dedication are synonymous. A literal reading of the statute in this case, however, may not serve to carry out the intent of the legislature. The predecessor of Minn.Stat. § 541.01 (1980), was enacted in 1899, in response to cases such as *City of St. Paul v. Chicago, M. & St. P. Ry. Co.,* in which this court ruled that the city's rights in a public levee could be lost through adverse possession. *City of St. Paul v. Chicago, M. & St. P. Ry. Co.,* 45 Minn. 387, 48 N.W.17 (1891). The original statute provided that:

No occupant of any public street, highway, alleys, public square or levee or any part or portion thereof within this state shall acquire any title to any such street, highway, alleys, public square or levee, or any part or portion thereof, by reason of such occupancy.

Act of March 18, 1899, ch. 65, § 1, 1899 Minn.Laws 65, 65.

In 1905, the legislature revised the statute to its present form:

Such [statute of] limitation shall apply to actions by or in behalf of the state and the several political divisions thereof: Provided, that no occupant of a public way, levee, square, or other ground dedicated or appropriated to public use shall acquire, by reason of his occupancy, any title thereto.

Act of April 18, 1905, ch. 77, § 4072, 1905 Revised Laws 1, 815.

The Minnesota law extended protection to a wider range of publicly held lands than did the laws of other states at that time. By 1905, several states distinguished between lands held by the state, which were not subject to adverse possession, and municipally-held lands, which were open to claims of adverse possession if the lands were held in a proprietary or business capacity.[2] The revised Minnesota statute did not distinguish between state and municipal lands, nor between land held in a proprietary or in a governmental capacity. Minnesota law interpreting the predecessor to the 1905 statute had held that Minnesota recognized no·distinction between governmental and proprietary capacities of a municipality, and the 1905 revised statute did not revive the distinction.

There is no distinction suggested, in either of these statutes, [regarding statutes of limitation] between actions brought as "sovereign" or in a governmental capacity, and those brought as "proprietary" or such as a private person might bring for the same or a similar purpose.

*City of St. Paul v. Chicago M & St. P. Ry. Co.,* 45 Minn. 387, 397, 48 N.W. 17, 20 (1891).

This court has continued to interpret Minnesota's statute to protect most public

---

2. *See City and County of San Francisco v. Straut,* 84 Cal. 124, 24 P. 814 (1890); *City of Chicago v. Middlebrooke,* 143 Ill. 265, 32 N.E. 457 (1892); *Schneider v. City of Detroit,* 135 Mich. 570, 98 N.W. 258 (1904). Since 1905, several more states have distinguished between lands held in a governmental and those held in a proprietary capacity. *See Goldman v. Quad-* *rato,* 142 Conn. 398, 114 A.2d 687 (1955); *Robinson v. Lemp,* 29 Idaho 661, 161 P. 1024 (1916); *City of New Orleans v. Salmen Brick & Lumber Co.,* 135 La. 828, 66 So. 237 (1914); *Ebell v. Baker,* 137 Or. 427, 299 P. 313 (1931). *See generally* Annot., 55 A.L.R.2d 554, 616 (1957).

lands against adverse possession. *McCuen v. McCarvel*, 263 N.W.2d 64 (Minn.1978) (no adverse possession of a drainage ditch is possible prior to vacation of the town road); *Neill v. Hake*, 254 Minn. 110, 93 N.W.2d 821 (1958) (public alley not open to adverse possession); *Village of Newport v. Taylor*, 225 Minn. 299, 30 N.W.2d 588 (1948) (platted but unopened street not open to adverse possession); *Murtaugh v. Chicago, M. & St. P. Ry. Co.*, 102 Minn. 52, 112 N.W. 860 (1907) (school lands not open to adverse possession).

 The court has upheld claims of adverse possession against public land only where the municipality has abandoned the use of the land and is therefore estopped from asserting a claim to it.

> In order to raise an estoppel in pais against a municipality, there must, in addition to nonuser and acquiescence, be some affirmative or unequivocal act of the municipality which, in view of all the circumstances, induced a third person reasonably to believe in and to rely upon such act as constituting a representation of an intent in fact to abandon the street, which representation of abandonment, were the municipality now permitted to deny it as not conforming to actual fact, would cause substantial injury to such third person, who in good faith relied thereon.

*Village of Newport v. Taylor*, 225 Minn. 299, 307, 30 N.W.2d 588, 593 (1948). (citations omitted).

In *City of Rochester v. North Side Corp.*, 211 Minn. 276, 1 N.W.2d 361 (1941), the court found a rare example of estoppel. In *North Side Corp.*, a constructed street differed from the street as it was originally platted. When the city sought to rebuild the street to conform to the plat, the city wanted to remove buildings constructed next to the existing street but on the originally platted street. One building had stood for over 40 years. The court found that the building's owners had acted in good faith and in reliance on the city's acts. In addition to nonuser, the city had: (1) relocated the street and improved and maintained it in its present location for many years; (2) laid municipal sewers and water mains in the relocated street; (3) issued building permits to defendant and his predecessors to erect the building on the platted street area. For these reasons, the court held, defendants had adversely possessed the portion of the originally platted street on which the building stood and the city was estopped to assert its rights to the property.

We decline to extend the *North Side Corp.* case beyond its facts. To adopt the distinction between proprietary and governmental capacities of either the state or a municipality as advocated by the appellants at this time would overturn a longstanding body of law which has developed in this state. Simply put, the rule is that one cannot acquire adverse title against the sovereign under our statutory scheme. This absolute rule does not preclude recovery in those rare cases such as *City of Rochester v. North Side Corp., supra,* where adverse possession is established not within the statutory scheme, but rather is allowed under the equitable doctrine of estoppel.

Affirmed.